```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
```
MARIS SANCHEZ, in her capacity as
Temporary Administrator of the ESTATE OF
CESAR A. SANCEHZ, JR., deceased; the
ESTATE OF CESAR A. SANCHEZ, deceased;
and MARIS SANCHEZ, individually,

                    Plaintiffs,           15-cv-9940 (PKC)

    -against-                       MEMORANDUM
                                      AND ORDER

CITY OF NEW YORK; the NEW YORK CITY
POLICE DEPARTMENT; POLICE OFFICER
ERNESTO SAVALLOS, individually and in his
capacity as an employee of the New York City
Police Department and/or the City of New York;
THE STATE OF NEW YORK; THE NEW
YORK STATE DIVISION OF PAROLE;
PAROLE OFFICER B. FELINE, individually
and in his capacity as an employee of the New
York State Division of Parole and/or the State of
New York,

                    Defendants.
```
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

        Maris Sanchez and the Estate of Cesar A. Sanchez bring this action asserting state law claims and claims under 42 U.S.C § 1983 for violations of their First, Fifth and Fourteenth Amendment rights. Plaintiffs seek to hold defendants liable for the death of Cesar Sanchez, alleging that defendants failed to prevent Delano Hubert, a New York state parolee, from shooting and killing Cesar Sanchez on September 22, 2014.

        Plaintiffs filed the Complaint on December 21, 2015. (Dkt. 6.) Despite being given several opportunities to amend the Complaint, plaintiffs have failed to do so. (See Dkts. 31, 34, 36, 42.) Defendants now move to dismiss the Complaint under Rules 12(b)(1) and

12(b)(6), Fed. R. Civ. P. (Dkts. 43, 45.) For reasons that will be explained, the motions to dismiss are GRANTED.

THE FACTS ALLEGED

The following factual allegations are taken from the Complaint and accepted as true for purposes of defendants' motions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). All reasonable inferences are drawn in favor of the plaintiffs as the non-movants. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

On September 22, 2014, Maris Sanchez's son, Cesar Sanchez, was shot by Delano Hubert, a New York State parolee. (Compl. ¶ 1.) Sanchez died two days later on September 24, 2014. (Id.) At the time of the shooting, Hubert had absconded from parole and had been registered as delinquent since May 15, 2013. (Id. ¶¶ 1, 11.)

Hubert was released on parole in 2011 after serving six years in prison for the shooting death of another individual. (Id. ¶ 3.) On November 29, 2012, Hubert was arrested by New York City Police Department ("NYPD") Officer Ernesto Sevallos for misdemeanor assault. (Id. 5.) According to the Complaint, the New York State Department of Corrections and Community Supervision ("DOCCS")[1] was automatically notified of Hubert's arrest which should have "triggered a revocation of his parole under the [DOCCS's] own regulations." (Id. ¶¶ 8-9.) However, plaintiffs allege that Hubert's parole officer at the time, Beverly Felmine, and/or the supervising DOCCS officer failed to report Hubert's arrest and failed to revoke his parole. (Id. ¶ 10.) Hubert absconded from parole and was registered as delinquent on May 15, 2013. (Id. ¶ 11.) Two weeks later a warrant was issued for his arrest but it was never executed. (Id. ¶¶ 12, 13.)

---

[1] DOCCS is named in the Complaint as the New York State Division of Parole. (Compl. ¶ 9.)

Almost a year and a half later, while still absconded from parole, Hubert shot and killed Cesar Sanchez. (Id. ¶¶ 1, 14.) Plaintiffs allege that he was "provided the opportunity to murder Mr. Sanchez" because defendants failed to monitor Hubert closely, execute the warrant for his arrest, and revoke his parole. (Id. ¶¶ 15-16.) Plaintiffs claim that these failures negligently, recklessly or intentionally caused Sanchez's death and plaintiffs' subsequent emotional distress, obstructed justice, and violated plaintiffs' constitutional rights. (Id. ¶¶ 20, 24, 26, 28, 30, 38, 42, 44, 46, 48.) Plaintiffs also claim that Sanchez's death was caused by the negligent hiring, training, supervision and retention of defendants' employees and by the unconstitutional policies and practices of both the City and State of New York. (Id. ¶¶ 32, 50-54.) Finally, the Complaint alleges that when Maris Sanchez inquired into the circumstances of her son's death including Hubert's parole and criminal record, "she received no cooperation from [State and City] employees . . . in violation of the New York City Freedom of Information Law." (Id. ¶ 21, 40.)

DISCUSSION

I. Plaintiffs Have Abandoned Their Claims.

At the outset, the Court notes that these plaintiffs, who are represented by counsel, filed an opposition to the motions to dismiss that makes no attempt to respond to any of defendants' legal arguments. Therefore, plaintiffs have abandoned their claims. See Lipton v. Cnty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); Martinez v. City of New York, 11 cv 7461 (JMF), 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) (dismissing claims as abandoned where plaintiff failed to respond to defendant's arguments for dismissal in her opposition); Wright v. Brae Burn

Country Club, Inc., 08 cv 3172 (DC), 2009 WL 725012, at *5 (S.D.N.Y. Mar. 20, 2009) ("When one party fails to respond to an opposing party's arguments that its claim must be dismissed, the claim may be deemed abandoned."); Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases). In any event, plaintiffs' claims are also meritless and must be dismissed.

II.     The State Defendants' Rule 12(b)(1) Motion to Dismiss.

The State of New York, DOCCS, and Beverly Felmine (together the "State Defendants") move to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction on the ground of sovereign immunity. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The Eleventh Amendment to the United States Constitution has been interpreted to mean that non-consenting states and their agencies are immune from suit in federal court. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984). This immunity extends to state officials acting in their official capacity. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983, the basis for plaintiffs' federal claims, did not abrogate the states' Eleventh Amendment immunity, Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d Cir. 1990) (absent consent of the State, the Eleventh Amendment bars section 1983 claims against the State), and New York has not consented to being sued in federal court. Trotman v. Palisades Interstate Park Cmm'n, 557 F.2d 35, 38-40 (2d Cir. 1977). Therefore, plaintiffs' damages claims against the State of New York, DOCCS and against Beverly Felmine in her official capacity are dismissed.[2]

---

[2] Plaintiffs previously withdrew all claims against Felmine in her individual capacity. (See State Defendants' Mem., Dkt. 44, Ex. A.)

Plaintiffs' sole claim for injunctive relief is similarly dismissed as barred by the Eleventh Amendment. Plaintiffs seek an injunction requiring defendants to comply with the New York Freedom of Information Law by providing plaintiffs with certain requested documents. (Compl. ¶ 40). However, the Eleventh Amendment prohibits courts from compelling state officials to comply with state laws. See Pennhurst, 465 U.S. at 106. Therefore, plaintiffs' claim against the State Defendants for injunctive relief is also dismissed.

III.     The City Defendants' Rule 12(b)(6) Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," are not entitled to any presumption of truth. Id.

a.   Claims Against the NYPD.

The NYPD is not a juridical entity separate from the City of New York. It is a non-suable agency of the City. See N.Y. City Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of city of New York and not in that of any agency, except where otherwise provided by law."). Plaintiffs' claims against the NYPD must be dismissed. See Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (approving the district court's conclusion that the NYPD is non-suable agency of the City).

b. <u>Plaintiffs' Section 1983 Claims.</u>

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived him of a right guaranteed to him by the Constitution or federal law. 42 U.S.C. § 1983; see <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996). Here, plaintiffs claim violations of their First, Fifth and Fourteenth Amendment rights. Plaintiffs also allege that the City is liable for the alleged constitutional violations, see <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 696 (1978).

i. <u>Fifth and Fourteenth Amendment Due Process Claims.</u>

The thrust of plaintiffs' due process claims is that defendants deprived Cesar Sanchez of his life, and deprived Maris Sanchez of her right to "continued family relations" with her son, both without due process of law, by failing to revoke Hubert's parole after he was arrested in 2012 and by failing to arrest him after he absconded from parole in 2013. According to plaintiffs, these omissions caused Sanchez's death by providing Hubert the "opportunity" to murder Sanchez in September 2014. (Compl. ¶ 16.) However, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 197 (1989).

In <u>Martinez v. California</u>, 444 U.S. 277 (1980) the Supreme Court held that state parole officials were not liable under section 1983 for the violent acts of a parolee released five months earlier. In that case, a parolee was released from prison despite his conviction for attempted rape and history of mental illness, and murdered a fifteen year old girl five months later. See <u>Martinez</u>, 444 U.S. at 279. Survivors of the girl sued the state officials responsible for releasing the parolee under section 1983. <u>Id.</u> In affirming dismissal of the action, the Court wrote that "[a]lthough the decision to release [the parolee] from prison was action by the State,

the action of [the parolee] five months later cannot be fairly characterized as state action." Id. at 284-85. In other words, the victim's death was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." Id. at 285. Two facts in particular were critical to the Court's decision. First, the Court noted that the parolee was "in no sense an agent of the parole board." Id. at 285. Second, "the parole board was not aware that [the victim], as distinguished from the public at large, faced any special danger." Id.

The shooting of Cesar Sanchez, which occurred almost two years after defendants failed to revoke Hubert's parole, and almost a year and a half after he absconded from parole, was even more removed in time from any state action than was the case in Martinez. In addition, the Complaint does not allege that Hubert was acting as an agent of the defendants, or that any member of DOCCS or the NYPD encouraged or directed Hubert to shoot Cesar Sanchez. See Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) ("the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')."). Nor is there evidence to suggest that the defendants were aware that Hubert posed any "special danger" to Sanchez as distinguished from the public at large. Martinez, 444 U.S. at 285. Finally, to the extent plaintiffs seek to hold the City defendants liable for failing to arrest Hubert immediately after a warrant was issued, there is no due process right to prompt enforcement of arrest warrants. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005) (holding that plaintiff did not, for purposes of

the Due Process clause, have a property interest in having police arrest her husband pursuant to a restraining order); see also Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

Accordingly, plaintiffs' due process claims are dismissed.[3]

    ii. First Amendment Claim.

Plaintiffs have also failed to state a claim for relief under the First Amendment. The Complaint alleges only that "Defendant(s) acts and/or omissions have violated [p]laintiff(s) rights pursuant to the First Amendment of the United States Constitution." (Compl. ¶ 42.) Plaintiffs do not identify any particular First Amendment right that defendants violated nor does the Complaint contain allegations that implicate a right guaranteed by the First Amendment. This type of boilerplate claim, unsupported by any factual allegations, fails to meet the plausibility standard of Twombly and Iqbal and must be dismissed.

    iii. Monell Claims.

Finally, plaintiffs assert that the City of New York is liable for the constitutional violations they suffered. A municipality may not be held liable on section 1983 claims solely "by application of the doctrine of *respondeat superior*." Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). Instead, in order to establish municipal liability, a plaintiff must show that: (1) "a particular municipal action *itself* violates federal law, or directs an employee to do so," Bd. of Cnty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original), (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," id. at 405, (3) unconstitutional "practices [are] so persistent and widespread as to practically have

---

[3] The new factual allegations raised in plaintiffs' opposition, in addition to being improperly raised, see Gomez v. New York City Police Dep't, 191 F. Supp. 3d 293, 301 n.3 (S.D.N.Y. 2016) ("A plaintiff may not use its opposition to a motion to dismiss to amend its complaint to add new claims.") (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir.1998)), do not change the Court's analysis.

the force of law," Connick v. Thompson, 563 U.S. 51, 61 (2011), or (4) a municipality's failure to train its employees about their legal duty to avoid violating a citizen's rights amounts to "deliberate indifference," id.  In any case, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Bryan Cnty., 520 U.S. at 404.

In the Complaint, plaintiffs accuse the City of having in place "policies, practices and customs that condoned and fostered the failure of individual police and parole officers to properly investigate and properly revoke parole for violations thereof, and to properly execute on warrants for those whose parole had been revoked."  (Compl. ¶ 53.)  According to plaintiffs, these policies and customs "demonstrated a deliberate indifference on the part of policymakers of the City of New York . . . to the Constitutional rights of persons within the City . . . and were the direct and proximate cause" of plaintiffs' constitutional violations.  (Id. ¶ 54.)

However, there can be no municipal liability where there are no underlying constitutional deprivations.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  As plaintiffs have failed to demonstrate that they have suffered any constitutional injury, their Monell claims against the City of New York under section 1983 fail as a matter of law.  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").

    c. <u>State Law Claims.</u>

Plaintiffs also bring a number of state law claims including, among others, claims for wrongful death, negligence, and intentional infliction of emotional distress.  Pursuant to 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction "to hear state law claims

that are so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III of the United States Constitution.'" Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (quoting 28 U.S.C. § 1367(a)). However, a district court "may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed plaintiffs' section 1983 claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims.

CONCLUSION

Defendants' motions to dismiss, (Dkts. 43, 45), are GRANTED. The Clerk is directed to enter judgment for the defendants and close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
August 4, 2017